UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

vs.                                                CASE NO.: 1:20-CR-20237

MICHAEL SOTO,

        Defendant.
_____/

**DEFENDANT'S SENTENCING MEMORANDUM
AND REQUEST FOR DOWNWARD DEPARTURE AND VARIANCE**

The Defendant, Michael Soto, by and through undersigned counsel, pursuant to 18 U.S.C. §§ 3553 and 3661; U.S.S.G. §§ 3B1.2 and 5K2.0; and Rule 32 of the Federal Rules of Criminal Procedure, hereby acknowledges receipt of and files this response to the Presentence Investigation Report. Further, the Defendant moves this Honorable Court to grant a downward departure from the applicable advisory sentencing guidelines range and presents the following relevant information for the Court to consider in determining whether to vary downward in this case.

FACTUAL BACKGROUND

Mr. Soto pled guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine and 1,000 kilograms or more of Cannabis while onboard a vessel subject to the jurisdiction of the United States. He is a lifelong resident of Costa Rica and was indicted after being intercepted on the high seas on September 7, 2020, at the time of sentencing he will have been in custody for approximately 19 months.

Mr. Soto is the father of three children, ages 9, 14, and 17. Mr. Soto has no relationship with his own biological father, but enjoys a strong relationship with his

children, his Mother, Blanca Rosa Muñoz Muñoz, and his siblings. Prior to this case, Mr. Soto had never been in contact with the criminal justice system. Before this arrest, Mr. Soto and his mother were the sole financial providers to his three children, who are all healthy and in school in their native Costa Rica.

Prior to the Covid-19 Pandemic, Mr. Soto was routinely employed full-time and supported his family both financially and emotionally. Since leaving his mother's home in sixth grade so he could work and support his family, including 4 half siblings, Mr. Soto has worked full time in many different industries. Of note, Mr. Soto worked most recently for four years as a butcher (from 2016 until the pandemic forced a shutdown), two years as a mechanic working on trucks (2014 – 2016) and two years as longshoreman, at the same port where his mother has worked for many years in Limon, Costa Rica.

When the Covid-19 pandemic shutdown the Costa Rican economy, Mr. Soto found himself without any form of income or means to support his family. When the situation grew dire, a co-defendant approached Mr. Soto about an income opportunity. Mr. Soto reluctantly but willfully accepted the offer of employment and agreed to work as a crewmember aboard a boat transporting Marijuana from Colombia to Costa Rica.

Mr. Soto possesses no specials skills of any kind and his role, beyond being present on the vessel, was limited to moving fuel containers from one end of the boat to the other and following similar basic instructions. Mr. Soto was unaware of the exact nature or quantity of cargo except that he understood it to be Marijuana destined for tourists and local consumption in Costa Rica. Regardless of the weight of narcotics involved, Mr. Soto should be viewed as having a minor role in this conspiracy when compared to those known and unknown to the Government.

<u>MOTION FOR DOWNWARD DEPARTURE</u>
<u>BASED ON MR. SOTO'S MINOR ROLE IN THE OFFENSE</u>

The facts and circumstances of this case provide a compelling basis for concluding that Mr. Soto was a minor participant in the relevant conduct at issue, which is not limited to the three crew members of a single GFV found in the ocean. Rather, this a case which involves a large group of participants, including those known and unknown to the Government and United States Probation. In this conspiracy, it is undisputed that Mr. Soto played a small and fungible role.

Mr. Soto was a deck hand who performed no specialized or distinguishing part in the offense. His function was to follow simple instructions while aboard the vessel. Mr. Soto had no ownership in the contraband, had no idea that someone had secreted four kilograms of cocaine aboard, and he had no ability to execute any changes, make any plans or participate in any decision making. Mr. Soto is completely unaware of and had no role in making supply chain or delivery decisions or agreements. Based on the limited manual labor he provided, Mr. Soto requests that this Court apply a minor role reduction or sustain a request for a similarly sized downward departure based on the applicability of USSG § 3B1.2(b).

The standard for assessing the applicability of a role-based downward departure is the two-prong test promulgated in *United States v. De Varon*, 175 F.3d 930 (11th Cir. 1999) (en banc). The first prong of *De Varon* calls for an analysis of the defendant's role in the crime in comparison to the relevant conduct for which he is held accountable under the Guidelines. *Id.* at 940-44. In devising this first prong, the Eleventh Circuit reasoned:

> [G]iven the relatively broad definition of relevant conduct under § 1B1.3, some defendants may be held accountable for conduct that is much broader than their specific acts. A conspiracy conviction is the classic example of this phenomenon. In such cases, a defendant's relevant conduct may be coextensive with the entire conspiracy even though her role in that conspiracy was relatively minor. Under these circumstances, a district court may adjust the defendant's sentence for her mitigating role

> in this broad conspiracy. This adjustment allows a district court to *impose a sentence that more closely mirrors the defendant's actual conduct, furthering the goals of imposing comparable sentences for similar acts.*

*Id.* at 941 (emphasis added). Accordingly, in the test's second stage, the defendant's role in the relevant conduct for which he is being sentenced is balanced against the role of other participants in that relevant conduct. *Id.* at 944-45. Specific factors relevant to the balancing determination include the amount and value of the drugs attributed to the conspiracy, the defendant's role in planning the conspiracy or in distributing the drugs, the defendant's equity interest in the drugs, and the amount of money the defendant stood to earn had the operation been successful. *Id.* at 945.

Similar cases and similarly situated defendants in this district have received a two-level reduction or departure in cases involving more drugs and more concerning circumstances, occasionally including the captain or master of the vessel. Oftentimes, recommendations to the Court regarding role adjustment are erroneously limited to the individuals before the Court at sentencing, thereby ignoring the comparative roles of other individuals known to Probation and the Government as required by the guidelines. Should the Court agree that the objection should be sustained, or alternatively, that a two-level departure is warranted, Mr. Soto's total offense level would fall from 25 to 23, resulting a Guideline Sentencing Range of 46 – 57 months before considering any 3553 factors or other basis for a variance.

REQUEST FOR DOWNWARD VARIANCE
PURSUANT TO 18 U.S.C. § 3553(A) FACTORS

In addition to a downward departure, Mr. Soto respectfully requests that this Court grant his request for a downward variance from the advisory guideline range pursuant to the factors set forth in 18 U.S.C. § 3553(a). See, *United States v. Booker,* 543 U.S. 220 (2005); *Rita v. United States,* 551 U.S. 338 (2007). Specifically, when considering a downward variance from the applicable guideline range, Mr. Soto requests

that the court consider the nature and circumstances of the case and his role therein, his post-arrest and post-guilty plea conduct, the issues of deterrence and recidivism, the need to avoid unwarranted sentencing disparities, and the tragic conditions he has faced while in the custody of the Bureau of Prisons, including untreated asthma and a failure to treat acute medical issues.

## Nature and Circumstances of the Case

Under 18 U.S.C. 3553(a) the sentencing Court must consider "the seriousness of the offense." Mr. Soto recognizes that this case is a serious offense and one which would have caused pain and suffering to the many victims of marijuana abuse in Costa Rica and elsewhere. Mr. Soto also recognizes that without his involvement, this serious crime could have been delayed or called off entirely. Mr. Soto would respectfully point out that his role, when compared with the other participants as defined by the Guidelines (meaning those present on the boat and those actually directing and profiting from the endeavor), was small and involved only the completion of menial tasks on the deck of a small boat in a vast ocean.

## Post Arrest Conduct

It is significant to note that Mr. Soto has exposed himself and his loved ones to great danger by meeting with Government officials and assisting them in the investigation of this case. While Mr. Soto was not any type of leader, or even an average-level participant in this conspiracy, he did provide critical information that would not have otherwise been available to the United States.

Mr. Soto's assistance to the government is relevant to the factors delineated in 18 U.S.C. §3553(a)(2), particularly the need for the sentence to promote respect for the law and to provide just punishment. These factors support the view that Mr. Soto's assistance, in the face of grave danger and in light of demonstrable results, should be

considered by the sentencing Court regardless of whether the Government decides to file a §5K1.1 motion.

Mr. Soto's conduct is also indicative of post offense self-rehabilitation and of respect for the law given that due to circumstances beyond his control, he had no idea what bearing if any his cooperation would have on an ultimate sentence, especially given that he chose not to delay proceedings and entered a guilty plea without any type of written plea agreement. His post-offense conduct is an attempt to both come to grips with his past bad decisions and to make up for the wrongs suffered by others through his actions. In this regard, Mr. Soto's sentence should be based upon both who he was before and after his involvement in this crime.

## Deterrence and Recidivism

Both the Sentencing Guidelines and 18 U.S.C. § 3553(a) require the sentencing court to consider the characteristics of the defendant that make it more or less likely that the defendant will reoffend. Mr. Soto's acceptance of responsibility and willingness to cooperate is one factor indicative of a desire to rehabilitate himself and to atone for the harm he has caused. His lengthy lawful employment record, humble academic accomplishments, many years of law-abiding conduct and lack of a prior criminal record all suggest that there is an extremely low probability of recidivism and that he poses no future risk to our society. Mr. Soto also carries the extra incentive to avoid reoffending because of his sense of responsibility towards his mother, his children and his partner who has remained steadfast in support for his youngest child.

## Status as a Deportable Alien and
## Conditions Faced in Custody Due to Covid-19 and at FDC Miami Generally

Prior to Mr. Soto's involvement with this conspiracy he had no prior contacts with the criminal justice system and had never been detained. Mr. Soto now finds himself in the United States, where he has and will suffer additional punishment based on his

custodial status as deportable alien and the conditions of his detention during the Covid-19 Pandemic and in general at FDC Miami.

### Deportable Alien

Mr. Soto will be deported at the conclusion of his term of imprisonment and thus will be ineligible for the Bureau of Prisons' early release programs and or rehabilitative programs such as RDAP (from which he would certainly benefit). Mr. Soto will also be subject to additional delay in his release from custody because he will be transferred to custody of the Department of Homeland Security at the conclusion of his sentence. In *United States v. Smith*, 27 F.3d 649, 307 U.S.App.D.C. 1999, the D.C. Circuit held that a downward variance may be appropriate if the defendant's status as a deportable alien is objectively likely to cause a fortuitous increase in the severity of confinement. Even if one were to ignore the lack of rehabilitative and vocational programs available to Mr. Soto and other deportable aliens, Mr. Soto will certainly remain in custody while awaiting proceedings that often take more than three months to complete after the completion of any criminal justice sentence, this is in and of itself an objectively increase in the severity of confinement.

### Conditions During Covid-19 Pandemic and Generally at FDC Miami Generally

On September 17, 2020, Mr. Soto arrived at FDC- Miami where he has been incarcerated under the most strenuous and difficult conditions due to the Covid-19 pandemic. During the Covid-19 pandemic, seven BOP staff members have died from Covid-19, as have 273 inmates across the Bureau of Prison's facilities. Over the course of the Covid-19 Pandemic the positivity rate among BOP inmates (which were undertested) skyrocketed, even today the current positivity rate among current inmates

that have been tested is 43% (See https://www.bop.gov/coronavirus/ returned April 22, 2022).

When Mr. Soto arrived at FDC Miami, he spent 23 hours a day locked in his cell or his pod due to quarantine. Eventually quarantine restrictions abated and this increasing the time one could leave his cell to three hours per day. Currently, the maximum amount of time an inmate is permitted to leave his cell is four hours per day. However, Mr. Soto is still regularly locked in his cell for more than 30 hours at a time. During Mr. Soto's stay at FDC-Miami, he has had no visitors and no video calls with friends or family.

### Asthma Attacks and Lack of Basic Medication

In addition to the general Covid-19 conditions that Mr. Soto has endured at FDC Miami, he has also been struck down regularly by asthma attacks without access to basic medications. While Mr. Soto was provided with Asthma medication during the first 60 days of his stay, since then has been forced to barter for the same medication from other inmates because staff has not authorized any refills. Mr. Soto has been diagnosed with Asthma since he was a child, he had Asthma medication on board the go-fast vessel when he was arrested and was provided with the same while aboard the Coast Guard Cutters *Escanaba* and *Harriet Lane*. BOP doctors have offered no explanation for the refusal or failure to refill his prescription.

### Self-Extraction of Two Impacted Molars and Lack of Medical Attention at FDC-Miami

In February of 2021, Mr. Soto began to suffer from two impacted molars which had been suffering from tooth decay and had become infected. Mr. Soto was seen by a Nurse or Nursing Assistant and advised that it would likely require surgery to resolve. Shortly thereafter, Mr. Soto began to suffer from extreme pain but his requests for medical attention were routinely ignored. He was so adamant, that on at least one

occasion he was placed in specialized housing but medical attention still did not arrive as he had hoped. The pain became so debilitating that Mr. Soto resorted to removing the molars on his own with little more than his own hands. One molar was removed completely and the other was so decayed that it shattered during the attempt to extract it, resulting in an excruciating process that lasted days. The result of these extractions has been extreme pain and significant swelling. In spite of this, Mr. Soto was again denied basic medical attention, including common antibiotics and pain medications. Mr. Soto still suffers from pain and inflammation in the area of the shattered molar. Mr. Soto has made numerous requests to be seen by a physician or dentist at FDC-Miami without success.

## **Need to Avoid Unwarranted Sentencing Disparities**

There are many sentences available for comparison to this case, crew members are recruited continuously, manipulated with false promises of life changing payments, and routinely prosecuted in this and other districts. Recent changes in the Southern District and others have followed a trend in active Title 46 districts, a trend that has consistently produced lower sentences for crew members, sentences that are more in line with the intent of the sentencing commission and modern understanding of the drug trafficking organizations (DTOs).

A long-held argument of Defendants in this and other districts has been that the lowest level participants in DTOs and Title 46 cases in particular, routinely receive similar or higher sentences then the very recruiters, mid-level managers and investors that lead these conspiracies. Should Mr. Soto be sentenced in the 57 – 71 month range as suggested by probation, he could likely spend more years incarcerated than had he held a supervisory role or that of other individuals situated above him in the hierarchy of this and other similar marijuana distribution groups.

CONCLUSION

For the foregoing reasons, Mr. Soto respectfully requests that the Court sustain his objection relating to his Role in the Offense or that the Court apply a Downward Departure based on the same reasoning, resulting in a Guideline Range of 46 – 57 months.

In addition, Mr. Soto would request that the Court then consider a downward variance equivalent to a three-level reduction in recognition of the § 3553 factors and reasons discussed above, resulting in Total Offense Level of 20 and Final Guideline Range of 33 – 41.

Lastly, Mr. Soto would then ask that the Court consider a 33% reduction from the bottom of the Final Guideline Range based on reasons to be presented to the Court by undersigned counsel and the Government at the time of sentencing. If persuaded, Mr. Soto would then ask the Court to impose a sentence of 22 months imprisonment with supervised release to follow.

Respectfully submitted,

/s/ Eduardo X. Pereira
Eduardo X. Pereira, Esq.
Arias & Pereira, PLLC
Attorney for Mr. Soto
Florida Bar No. 0019314
2600 S. Douglas Road, Ste 1004
Miami, Florida 33134
Tel: 786-360-1341
eddie@ariasandpereira.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

/s/ Eduardo X. Pereira
Eduardo X. Pereira, Esq.
Arias & Pereira, PLLC
Attorney for Mr. Soto
Florida Bar No. 0019314
2600 S. Douglas Road, Ste 1004
Miami, Florida 33134
Tel: 786-360-1341
eddie@ariasandpereira.com